·In re NICHOLAS.

(District Court, N. D. New York. March 30, 1903.)

1. BANKRUPTCY—SALES UNDER CONTRACT—RIGHT OF TRUSTEE TO RETURN GOODS.

Bankrupt, who was a merchant, a few months prior to his bankruptcy entered into a contract with a creditor by which he was to have the agency for the sale of patterns made by the creditor. The contract provided for the purchase by him of a stock of patterns, and the purchase of new patterns from time to time thereafter, as required. It gave him the right twice a year to return old patterns, in accordance with a discard list to be published, in exchange for new ones, at a fixed ratio of exchange, but expressly provided that "by this exchange is meant an exchange of new patterns for old patterns returned and not a cash credit." It also provided that in case the contract should be terminated by notice at the expiration of any year as therein prescribed, "and all the obligations herein being fulfilled," the bankrupt could return all patterns remaining in stock, and receive credit for the same, at prices stated. The bankruptcy occurred within a year, and the business was discontinued by the trustee. *Held*, that the rights of both the trustee and the creditor were governed by the contract; that the trustee took only the rights of the bankrupt thereunder, and was not entitled to return the patterns on hand, to be credited to the bankrupt's account, nor could patterns returned for exchange by the bankrupt within four months preceding the bankruptcy be deemed a preference, but that the creditor was required to surrender as a preference only the excess of cash payments received during that time over the value of the patterns shipped during the same time.

In Bankruptcy. This is an appeal to the court by the New Idea Pattern Company from the order of Hon. William H. Comstock, referee in bankruptcy, made on the 6th day of December, 1902, reducing the claim of the said appellant from the sum of $261.05 to $121.84, and allowing such claim to be proved at the latter sum, provided the appellant pays into court the sum of $38.26, part of the sum received by the appellant on account of goods sold John J. Nicholas and paid during the four months preceding the filing of petition in bankruptcy herein.

L. N. Southworth, for appellant.
John H. Grant, for trustee.

RAY, District Judge. On the 12th day of March, 1902, the appellant, the New Idea Pattern Company, a corporation of the state of New York, named and known in the contract as the "Publishers," entered into a written contract with John J. Nicholas, a merchant of the city of Utica, N. Y., and who is known and named in the contract as the "Merchant." The contract is in the words and figures following, viz.:

"The New Idea Pattern Co., a corporation of New Jersey, with principal office in New York City, hereinafter called the Publishers, and John J. Nicholas, merchant of Utica, N. Y., hereinafter called the Merchant and for good and valuable consideration hereby mutually acknowledged, have entered into an arrangement, the details of which are as follows:

"The Publishers grant the Merchant the right to act as special agent for the sale of their product in Utica, N. Y., and agree to sell and deliver from their principal office in New York City, or their western office in Chicago, Illinois, to the Merchant their Patterns, Fashion Sheets, Fashion Review, etc., in the quantities and at the intervals hereinafter mentioned and the Merchant hereby agrees to pay for same the prices and in the manner hereinafter specified, and to pay all expenses incurred in the transportation of the same.

"The Merchant agree to purchase from the Publishers a first or original stock of patterns to the value of two hundred and twenty-five dollars ($225.00) net, including the May dated styles and two cases to hold the same; also the new patterns as issued monthly thereafter, namely: as ordered from an advance sheet to be sent agent, monthly: Ladies' Patterns, etc.

"The Publishers agree to permit the sum of $112.50 dollars, ($112.50) part of the value of the original stock of patterns above, to stand unpaid on their books as a standing credit until the termination of this arrangement, to bear interest at three per cent. per annum, payable semiannually on January 15th and July 15th of each year, one-half of the original invoice to be paid in three payments, in 30, 60, and 90 days.

"The Merchant agrees to purchase from the Publishers the Fashion Sheets monthly at five dollars ($5.00) per 1,000 for gratuitous distribution, as follows:

"These fashion sheets to contain the advertisement of the Merchant in the space reserved for that purpose, with the privilege of changing such advertisement every issue if desired, copy for which advertisement, or any changes therein to be delivered at the principal office of the Publishers, 636 and 638 Broadway, New York City, on or before the 15th of the second month preceding the date of the Fashion sheets.

"The Merchant agrees to purchase from the Publishers five copies of the Fashion Review quarterly commencing with the May issue with the privilege of increasing or decreasing.

"The Publishers agree to allow the Merchant to return for exchange twice each year as per discard list issued semiannually, in January and February and in July and August, any of the patterns furnished hereunder and remaining intact and not damaged, at the rate of seven new patterns for every eight returned, the patterns so returned to be replaced at the time of the return or by the subsequent monthly shipments of new patterns being applied until

the exchange is exhausted. By this exchange is meant an exchange of new patterns for old patterns returned and not a cash credit.

"The Merchant agrees to keep the patterns on the ground floor; to give proper attention to the sale of the same in person or otherwise and not to assign it or transfer the agency hereunder to any party or parties without the Publishers' written consent.

"The Merchant agrees to pay the Publishers as follows: For all patterns, six (6) cents each, retailing at ten (10) cents; for all Fashion Reviews, five (5) cents each, retailing at ten (10) cents; for 2 pigeonhole cases on memo.

"Terms: net in 30 days; or less two per cent. for cash in 10 days from date of invoice.

"It is mutually agreed that this arrangement shall remain in force for a period of one year from the date hereof and from year to year thereafter until terminated in the following manner:

"Either party may terminate this arrangement by giving to the other at the expiration of the periods above stated sixty days' notice in writing to that effect, the arrangement to continue during the said sixty days. After which time the Merchant agrees to return in good order to the Publishers at their principal office in New York City all patterns purchased hereunder and then on hand; and all the obligations herein being fulfilled the Publishers will accept and give the Merchant credit for such patterns at three-fourths the amount originally charged, and will pay the Merchant in cash within thirty days thereafter any balance due. Failure by the Merchant to return the said patterns within twelve days after the expiration of the notice to discontinue will relieve the Publishers of the obligations to receive or pay for the same. Signed this 12th day of March, 1902.

"The New Idea Pattern Co.
"By Weatherly, Secr'y.
"Agent's signature,
"John J. Nicholas.

"Original shipping via D L. & W.
"Future shipments via ———."

Under and pursuant to this contract the appellant delivered to the purchaser, Nicholas, merchandise of the character mentioned in the contract, and under and pursuant to the terms thereof, as follows:

1902.

Between April 2d and April 30th, the appellant delivered to said Nicholas, now bankrupt, merchandise under said contract to the value of ................................................ $265 11

Of this, $112.50 stood as a standing credit under the contract, and was not due or payable.

| | | |
|---|---:|---:|
| Between May 6th and May 29th, inclusive, merchandise to the value of | 27 | 33 |
| Between June 3d and June 30th, merchandise to the value of........ | 28 | 89 |
| Between July 2d and July 29th, inclusive, merchandise to the value of | 10 | 41 |
| Between August 1st and August 30th, inclusive, merchandise to the value of ...................................................... | 14 | 03 |
| Between September 2d and September 22d, merchandise to the value of ....................................................... | 22 | 00 |

Total goods delivered..................................... $367 77

The interest on the amount placed as a standing credit amounts to the sum of ...................................................... 1 12

Making ...................................................... $368 89

Nicholas, now bankrupt, paid on this account as follows:

May 13th, postal cards....................................... $ 25
October 10th, merchandise returned........................... 66
Racks returned ............................................. 12 00
                                                            ——— 12 91

This deducted leaves a balance of........................... $355 98

Nicholas, the bankrupt, made payments of cash on this account as follows:

1902.
May 13.  Cash.............................................. $37 59
June 19.  Cash..............................................   35 00
July 17.  Cash..............................................   35 00

    Total cash payments ...............................       $107 59

Nicholas claims that on or about the 9th day of September, 1902, he returned to the appellant old patterns to the amount of $53.68.

On or about the 22d day of September, 1902, said Nicholas filed a petition in bankruptcy in the District Court of the Northern District of New York, and this was followed by an adjudication in bankruptcy, and George E. Dennison was duly appointed trustee. After his appointment as trustee, and on or about the 25th day of November, 1902, said trustee shipped to the appellant, the New Idea Pattern Company, 2,530 old patterns, and also the cases in which the patterns were stored, the value of which, as fixed by the price at which they were sold, was $111.75. The appellant declined to receive the patterns returned by the trustee, on the ground that, under the contract, it not having been fulfilled by the bankrupt, and the appellant not having received the benefits of the contract, it was not under obligation to receive the same.

During the four months prior to the filing of the petition in bankruptcy, and subsequent to June 19th, the appellant shipped and delivered to Nicholas goods to the value of $47.76, and received cash payments during the same time to the sum of $70.

The main question involved is whether or not, under the contract, the trustee, after his appointment, could return to the appellant, and the appellant was obligated to receive, old patterns, and have the same deducted from the account.

The following clause in the contract is important, viz.:

"The Publishers agree to allow the Merchant [Nicholas] to return for exchange twice each year as per discard list issued semiannually, in January and February and in July and August, any of the patterns furnished hereunder and remaining intact and not damaged, at the rate of seven new patterns for every eight returned, the patterns so returned to be replaced at the time of the return or by the subsequent monthly shipments of new patterns being applied until the exchange is exhausted. By this exchange is meant an exchange of new patterns for old patterns returned and not a cash credit."

Nicholas agreed to pay the appellant for all patterns retailing at 10 cents, 6 cents each; for all Fashion Reviews retailing at 10 cents, 5 cents each,—net cash in 30 days, or less 2 per cent. for cash in 10 days, from date of invoice.

It was provided that the contract might be terminated in the manner following:

"Either party may terminate this arrangement by giving to the other at the expiration of the periods above stated sixty days' notice in writing to that effect, the arrangement to continue during the said sixty days. After which time the Merchant [Nicholas] agrees to return in good order to the Publishers [the appellant] at their principal office in New York City all patterns purchased hereunder and then on hand; and all the obligations herein being fulfilled the Publishers [the appellant] will accept and give the Mer-

chant [Nicholas] credit for such patterns at three-fourths the amount originally charged, and will pay the Merchant [Nicholas] in cash within thirty days thereafter any balance due. Failure by the Merchant [Nicholas] to return the said patterns within twelve days after the expiration of the notice to discontinue will relieve the Publishers [the appellant] of the obligations to receive or pay for the same."

Here is a provision for termination of the contract. But it was not terminated in this way. On the other hand, it was terminated by the bankruptcy of Nicholas, and his consequent neglect and failure to perform the obligations of the. contract. The trustee, when appointed, did not continue the business, and carry out and perform the obligations of the contract, and consequently is not entitled to the benefits of the provision therein contained for the return of patterns in exchange for others. That provision for a return of old patterns was simply a provision providing for an exchange of old goods for new goods, such as would be supposed to be merchantable and in demand by purchasers. The trustee in bankruptcy, on his appointment, took title to all the property on hand, subject to any rights of the appellant; but he took that title charged with all the liens, incumbrances, and obligations existing against it, as they would have existed, had the property remained in the hands of the bankrupt, and he took no other or greater interest in the property, and no other or greater rights under the contract, than the bankrupt himself had.

The appellant was under no obligation, after bankruptcy intervened, to take back any of the old patterns at any price or sum, and the claim of the appellant could not be reduced on account of any such return of property. The appellant had agreed to take back old patterns twice each year in exchange for new patterns at the rate of seven new patterns for every eight old ones returned, and the patterns returned were to be replaced at the time of the return, or by subsequent monthly shipments of new patterns being applied until the exchange was exhausted. It is then expressly provided in the contract, "By this exchange is meant an exchange of new patterns for old patterns returned, and not a cash credit." After the bankruptcy of Nicholas, there could be no substitution of a new contract, compelling the appellant to take back the old patterns at any price, except in exchange; and it would be making a new contract to compel the appellant to take back the old patterns, and allow a credit—in effect, a cash credit. The exchange value was fixed (that is, the number of old patterns to be accepted in exchange for new ones was fixed); but this contemplated a continuation of business and of sales, and profit to the appellant.

With the permission of the court, the trustee might have continued the business, in which case he could have returned old patterns in exchange for new ones, and, on giving notice pursuant to the contract, could have terminated it in the manner provided, in which case the settlement and adjustment of the account would be according to the stipulations of the contract. Not having done this, patterns returned prior to the filing of the petition in bankruptcy must be charged, and the account must receive credit or deduction as per the contract, but those not returned prior to that event must be included in the account, as though sold by Nicholas.

Nor can the return of old patterns to the value of $53.68 on September 9th be regarded in any sense as a payment on account or a preference. Such return was not a payment, but an exchange, Nicholas taking new stock in place of the old. Of course, as matter of bookkeeping, this would appear as a credit, or should so appear, but would not be a payment on account, in the sense of a payment in money or merchandise, or as contemplated by law. The statement in the evidence: "Q. So that, during the four months preceding the filing of the petition in bankruptcy, you paid them $123.68? Ans. Yes"—is not correct. The payments on account during that time were $70, and no more, although the debtor side of the account was reduced by the further sum of $53.68, and the credit side was increased by the amount of goods delivered to the bankrupt during that period.

During the four months preceding the filing of the petition, and subsequent to the first payment on account, counted a preference, the goods delivered were of the value of..............................  $47 76
And the payments were............................................  70 00
                                                                   ———
      Difference ..............................................  $22 24

Therefore $22.24 is the amount of the preferential payment received by the appellant, and which sum is to be paid back by it, as a condition of proving the claim and having it allowed.

The account should be adjusted as follows:

Total goods shipped, exclusive of pattern cases, to April 30th........  $253 11
Interest on standing credit.........................................    1 12
Pattern cases ......................................................   12 00
Total goods shipped May 6th to September 22d........................  102 66
                                                                     ———
      Total Dr. .....................................................  $368 89
Pattern cases returned .....................................  $12 00
Cash payment ..............................................   37 59
Patterns returned (value) .................................   53 68
                                                             ———   103 27
                                                                   ———
                                                                   $265 62
Cash payments allowed not preferred..............................   47 76
                                                                   ———
      Balance claim allowed ....................................... $217 86
On condition petitioner pays back $22.24, amount of preference,
      Or deducting that amount....................................   22 24
                                                                   ———
      Leaves unpaid ............................................... $195 62
On paying to trustee the sum of $22.24, that sum may be added to the
      $195.62, making............................................. $217 86
on which appellant will receive his dividend.

The order of the referee is reversed, and he will allow the claim as directed by this opinion.